MEF:JAW:ALW/JRK:alw
F.#1999R01685

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT ⌐ D. N.Y.

★     JAN 3 1 2001     ★

TIME A.M.————————
P.M.————————

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

¹ RONALD CALIFANO,
    also known as "Downtown Ronnie,"
² FRANK CAMPANELLA,
    also known as "Frank Campy,"
³ JOHN J. DEROSS,
    also known as "Jackie,"
⁴ DOMINICK DIONISIO,
    also known as "Black Dom,"
⁵ MICHAEL T. DONATO,
⁶ RALPH JUDE GUCCIONE,
    also known as "Anthony Philips,"
    "Ralph Rizzo" and
    "Ralph Russo,"
⁷ ENRICO LOCASCIO,
    also known as "Rico,"
⁸ CHRISTOPHER MORMANDO,
    also known as "Chrissy Boy,"
⁹ ALPHONSE T. PERSICO,
    also known as "Little Allie Boy"
    and "Allie Boy,"
¹⁰ JOSEPH ANTHONY PETILLO
    also known as "Joseph Paladino"
    and "Enrico Gambale," and
¹¹ VITO SALERNO,

        Defendants.

- - - - - - - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 01-0056 (S-1)(RR)
(T. 18, U.S.C., §§ 894, 982,
1951, 1955, 1956(h), 1962(c),
1962(d), 1963, 2 and 3551 et
seq.; T. 21, U.S.C., §§ 846,
841(b)(1)(A)(vii) and
841(b)(1)(C))

THE GRAND JURY CHARGES:

        At all times relevant to this indictment, unless otherwise

indicated:

The Colombo Family Enterprise

1.    The members and associates of the Colombo
organized crime family of La Cosa Nostra (the "Colombo family")
constituted an "enterprise," as that term is defined in Title 18,
United States Code, Section 1961(4), that is, a group of
individuals associated in fact.  The Colombo family engaged in,
and its activities affected, interstate and foreign commerce.
The Colombo family was an organized criminal group that operated
in the Eastern District of New York and elsewhere.

2.    The Colombo family operated through groups of
individuals headed by "captains," who were also referred to as
"skippers," "caporegimes" and "capodecinas."  These groups, which
were referred to as "crews," "regimes" and "decinas," consisted
of "made" members of the Colombo family, who were referred to as
"soldiers," "friends of ours," "good fellows" and "buttons," and
associates of the Colombo family.

3.    Each captain was responsible for supervising the
criminal activities of his crew and providing crew members and
associates with support and protection.  In return, the captain
received a share of the earnings of each of the crew's members
and associates.

4.    Above the captains were the three highest-ranking
members of the Colombo family.  The head of the Colombo family
was known as the "boss."  He was assisted by an "underboss" and a

counselor, who was known as the "consigliere." With the
assistance of the underboss and consigliere, the boss was
responsible for setting policy, resolving disputes between
members of the Colombo family and members of other criminal
organizations, and approving all significant actions by members
of the Colombo family, including murder. When a member of the
administration was unable to fulfill his criminal
responsibilities because of incarceration, ill health or other
reason, a member of the Colombo family was often appointed to
that position in an acting capacity.

5.    The boss, underboss and consigliere of the Colombo
family, who were sometimes referred to collectively as the
"administration," supervised, supported, protected and
disciplined the captains, soldiers and associates and regularly
received reports regarding the activities of the members and
associates of the Colombo family. In return for their
supervision and protection, the boss, underboss and consigliere
received part of the illegal earnings of each crew.

6.    The Colombo family was part of a nationwide
criminal organization known by various names, including the
"mafia" and "La Cosa Nostra," which operated through entities
known as "families." The ruling body of this nationwide
organization was known as the "commission," the members of which
have at various times included the bosses of the five New York

City-based families, to wit:  the Bonanno, Colombo, Gambino,
Genovese and Luchese organized crime families.

     7.   From time to time, the Colombo family would
propose a list of associates to be "made," that is, to become
members of the Colombo family.  The list would be circulated to
the other families based in New York City.  Upon becoming "made,"
each member would take an oath of "omerta," vowing never to
reveal any information about the Colombo family, its members or
associates.

     8.   At various times relevant to this indictment, the
defendant ALPHONSE T. PERSICO was a soldier, a captain, and the
acting boss of the Colombo family; the defendant JOHN J. DEROSS
was a soldier, a captain, and the underboss of the Colombo
family; the defendants FRANK CAMPANELLA, DOMINICK DIONISIO,
MICHAEL T. DONATO, RALPH JUDE GUCCIONE, ENRICO LOCASCIO,
CHRISTOPHER MORMANDO and JOSEPH ANTHONY PETILLO were associates
of the Colombo Family.

     9.   At various times relevant to this indictment,
William Cutolo was a captain and a member of the administration
of the Colombo Family, and his crew members included the
defendants FRANK CAMPANELLA, DOMINICK DIONISIO, MICHAEL T.
DONATO, RALPH JUDE GUCCIONE, ENRICO LOCASCIO, CHRISTOPHER
MORMANDO and JOSEPH ANTHONY PETILLO.  On May 26, 1999, William
Cutolo disappeared.  After May 26, 1999, the defendant JOHN J.

DEROSS took control of Cutolo's crew and its activities.

The Purposes, Methods and Means of the Colombo Family Enterprise

10. The principal purpose of the enterprise was to generate money for its members and associates. This purpose was implemented by members and associates of the enterprise through various criminal activities affecting interstate and foreign commerce, including drug trafficking, illegal gambling, loansharking, extortion, securities fraud and money laundering. Among other methods and means by which the members of the enterprise furthered its criminal activities were threatening economic injury and threatening and actually using physical violence, including murder.

11. Members and associates of the Colombo family engaged in conduct designed to prevent government detection of their identities, their illegal activities, and the location of the proceeds of those activities. To prevent such detection, members and associates of the enterprise were committed to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

12. Members and associates of the enterprise often coordinated street-level criminal activity, such as drug trafficking, loansharking, extortion and gambling, with members and associates of other organized crime families, including the

Bonnano, Gambino, Genovese and Luchese organized crimes family of La Cosa Nostra.

## The Embassy Terrace Enterprise

13.   Embassy Terrace, Inc., doing business as NCT Catering ("Embassy Terrace"), was a catering hall at 401 Avenue U, Brooklyn, New York.   Embassy Terrace constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), that is, a corporation.   Embassy Terrace engaged in, and its activities affected, interstate commerce.

14.   The defendant VITO SALERNO was the President and the sole shareholder of Embassy Terrace.

## COUNT ONE
(Racketeering)

15.   The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

16.   In or about and between November 1993 and October 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN J. DEROSS, also known as "Jackie," DOMINICK DIONISIO, also known as "Black Dom," MICHAEL T. DONATO, RALPH JUDE GUCCIONE, also known as "Anthony Philips," "Ralph Rizzo" and "Ralph Russo," CHRISTOPHER MORMANDO, also known as "Chrissy Boy," ALPHONSE T. PERSICO, also known as "Little Allie Boy" and "Allie Boy," and JOSEPH ANTHONY PETILLO, also known as "Joseph Paladino" and "Enrico Gambale," together with William Cutolo and others, being

persons employed by and associated with the Colombo family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity.  The defendants participated in the affairs of the enterprise through the commission of multiple racketeering acts, as set forth below.

## RACKETEERING ACT ONE
(Loansharking Conspiracy)

17.  The defendants named below committed the following acts, either one of which alone constitutes the commission of racketeering act one:

A.    Loansharking Conspiracy

18.  In or about and between November 1993 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN J. DEROSS, DOMINICK DIONISIO, MICHAEL T. DONATO, RALPH JUDE GUCCIONE, ALPHONSE T. PERSICO and JOSEPH ANTHONY PETILLO, together with others including William Cutolo, knowingly and intentionally conspired to participate in the use of extortionate means to collect and attempt to collect extensions of credit, in violation of Title 18, United States Code, Section 894.

B.    Money Laundering Conspiracy

19.  In or about and between May 1999 and October 1999,

both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants JOHN J.
DEROSS, DOMINICK DIONISIO, MICHAEL T. DONATO, RALPH JUDE
GUCCIONE, ALPHONSE T. PERSICO and JOSEPH ANTHONY PETILLO,
together with others, knowingly and intentionally conspired to
conduct and attempt to conduct financial transactions affecting
interstate commerce, to wit: the transfer of United States
currency, involving property used to conduct and facilitate
specified unlawful activity, to wit: loansharking, with the
intent to promote the carrying on of such specified unlawful
activity, in violation of Title 18, United States Code, Section
1956(a)(3)(A), in violation of Title 18, United States Code,
Section 1956(h).

### RACKETEERING ACT TWO
(Money Laundering Conspiracy: Embassy Terrace)

20.    In or about and between January 1992 and October
1999, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JOHN
J. DEROSS and ALPHONSE T. PERSICO, together with William Cutolo
and others, knowing that the property involved in financial
transactions represented the proceeds of some form of unlawful
activity, knowingly and intentionally conspired to conduct and
attempt to conduct financial transactions affecting interstate
commerce, to wit: the transfer of United States currency, which
transactions in fact involved the proceeds of specified unlawful

activity, to wit: loansharking, gambling, securities fraud, distribution of controlled substances and extortion, knowing that such financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of such proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), in violation of Title 18, United States Code, Section 1956(h).

### RACKETEERING ACT THREE
(Illegal Gambling)

21.    In or about and between January 1992 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MICHAEL T. DONATO, RALPH JUDE GUCCIONE and JOSEPH ANTHONY PETILLO, together with William Cutolo and others, knowingly and intentionally conducted, managed, supervised, directed and owned all or part of an illegal gambling business, which business was in violation of the laws of the State of New York, involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business, and remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

## RACKETEERING ACT FOUR
(Conspiracy to Distribute Marijuana)

22.   In or about and between January 1992 and January 7, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RALPH JUDE GUCCIONE and JOSEPH ANTHONY PETILLO, together with others, knowingly and intentionally conspired to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

## RACKETEERING ACT FIVE
(Conspiracy to Distribute MDMA)

23.   In or about and between 1993 and 1995, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINICK DIONISIO, together with others, knowingly and intentionally conspired to distribute MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

## RACKETEERING ACT SIX
(Securities Fraud)

24.   In or about and between January 1996 and December 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINICK DIONISIO, together with William Cutolo and others, knowingly and willfully used and employed manipulative and deceptive devices and contrivances in violation of Rule 10b-5 of the rules and regulations of the Securities and Exchange

Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendant and others directly and indirectly (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of conduct which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of securities at Global Strategies Group, Inc., Amerivet Dymally Securities and First National Equity Corporation by the use of the instruments of communication in interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b), 78t and 78ff.

## RACKETEERING ACT SEVEN
### (Securities Fraud)

25.    In or about and between May 1994 and October 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHRISTOPHER MORMANDO, together with William Cutolo and others, knowingly and willfully used and employed manipulative and deceptive devices and contrivances in violation of Rule 10b-5 of the rules and regulations of the Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendant and others directly and indirectly (a) employed

devices, schemes and artifices to defraud; (b) made untrue
statements of material facts and omitted facts necessary in order
to make the statements made, in light of the circumstances under
which they were made, not misleading; and (c) engaged in acts,
practices, and courses of conduct which would and did operate as
a fraud and deceit upon members of the investing public, in
connection with purchases and sales of securities at Global
Strategies Group, Inc., Hanover Sterling & Co., Ltd. and Norfolk
Securities Corp. by the use of the instruments of communication
in interstate commerce and the mails, in violation of Title 15,
United States Code, Sections 78j(b), 78t and 78ff.

RACKETEERING ACT EIGHT
(Money Laundering Conspiracy: Conti-nect/ANET)

26.    In or about and between June 1996 and October
2000, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JOHN
J. DEROSS, DOMINICK DIONISIO and CHRISTOPHER MORMANDO, together
with William Cutolo and others, knowing that the property
involved in financial transactions represented the proceeds of
some form of unlawful activity, knowingly and intentionally
conspired to conduct and attempt to conduct financial
transactions affecting interstate commerce, to wit: the transfer
of United States currency, checks and money orders, which
transactions in fact involved the proceeds of specified unlawful
activity, to wit: loansharking, gambling, securities fraud,

distribution of controlled substances and extortion, knowing that
such financial transactions were designed in whole and in part to
conceal and disguise the nature, location, source, ownership and
control of such proceeds, in violation of Title 18, United States
Code, Sections 1956(a)(1)(B)(i) and 1956(h).

## RACKETEERING ACT NINE
### (Extortion Conspiracy)

27.    In or about May 2000, within the Eastern District
of New York and elsewhere, the defendant JOHN J. DEROSS, together
with others, knowingly and intentionally conspired to commit
larceny by extortion, to wit: by instilling in John Doe #1, an
individual whose identity is known to the Grand Jury, a fear that
the defendant or another person would cause physical injury to
John Doe #1 in the future, in violation of New York Penal Law
Sections 105.40 and 105.10.

(Title 18, United States Code, Sections 1962(c), 1963
and 3551 et seq.)

## COUNT TWO
### (Racketeering Conspiracy)

28.    The allegations of paragraphs 1 through 14 and 17
through 27 are realleged and incorporated as if fully set forth
herein.

29.    In or about and between November 1993 and October
2000, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JOHN

J. DEROSS, also known as "Jackie," DOMINICK DIONISIO, also known as "Black Dom," MICHAEL T. DONATO, RALPH JUDE GUCCIONE, also known as "Anthony Philips," "Ralph Rizzo" and "Ralph Russo," CHRISTOPHER MORMANDO, also known as "Chrissy Boy," ALPHONSE T. PERSICO, also known as "Little Allie Boy" and "Allie Boy," and JOSEPH ANTHONY PETILLO, also known as "Joseph Paladino" and "Enrico Gambale," together with William Cutolo and others, being persons employed by and associated with the Colombo family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, in violation of Title 18, United States Code, Section 1962(c).

30.    The pattern of racketeering activity through which the above-named defendants agreed to conduct the affairs of the enterprise consisted of the acts charged in Count One, which are realleged and incorporated as if fully set forth herein. It was part of the racketeering conspiracy that the defendants agreed that at least one coconspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT THREE
(Racketeering Conspiracy)

31.    The allegations of paragraphs 1 through 14 and 17 through 27 are realleged and incorporated as if fully set forth herein.

32.    In or about and between November 1993 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VITO SALERNO, together with William Cutolo and others, knowingly and intentionally conspired to receive income derived directly and indirectly from a pattern of racketeering activity, as described in Count One of this indictment, in which coconspirators, including William Cutolo, participated as a principal, and coconspirators, including William Cutolo, used and invested, directly and indirectly, any part of such income, in the acquisition of any interest in, and the establishment and operation of, any enterprise which was engaged in, and the activities of which affected, interstate commerce, to wit: Embassy Terrace, in violation of Title 18, United States Code, Section 1962(a).

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT FOUR
(Loansharking Conspiracy)

33.   The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

34.   In or about and between November 1993 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, also known as "Frank Campy," JOHN J. DEROSS, also known as "Jackie," DOMINICK DIONISIO, also known as "Black Dom," MICHAEL T. DONATO, RALPH JUDE GUCCIONE, also known as "Anthony Philips," "Ralph Rizzo" and "Ralph Russo," ALPHONSE T. PERSICO, also known as "Little Allie Boy" and "Allie Boy," and JOSEPH ANTHONY PETILLO, also known as "Joseph Paladino" and "Enrico Gambale," together with William Cutolo and others, knowingly and intentionally conspired to participate in the use of extortionate means to collect and attempt to collect extensions of credit.

(Title 18, United States Code, Sections 894 and 3551 et seq.)

## COUNT FIVE
(Money Laundering Conspiracy: Loansharking)

35.   The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

36.   In or about and between May 1999 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK

CAMPANELLA, also known as "Frank Campy," JOHN J. DEROSS, also

known as "Jackie," DOMINICK DIONISIO, also known as "Black Dom,"

MICHAEL T. DONATO, RALPH JUDE GUCCIONE, also known as "Anthony

Philips," "Ralph Rizzo" and "Ralph Russo," ALPHONSE T. PERSICO,

also known as "Little Allie Boy" and "Allie Boy," and JOSEPH

ANTHONY PETILLO, also known as "Joseph Paladino" and "Enrico

Gambale," together with others, knowingly and intentionally

conspired to conduct and attempt to conduct financial

transactions affecting interstate commerce, to wit: the transfer

of United States currency, involving property used to conduct and

facilitate specified unlawful activity, to wit: loansharking,

with the intent to promote the carrying on of such specified

unlawful activity, in violation of Title 18, United States Code,

Section 1956(a)(3)(A).

(Title 18, United States Code, Sections 1956(h) and

3551 et seq.)

## COUNT SIX
(Money Laundering Conspiracy: Embassy Terrace)

37.    The allegations of paragraphs 1 through 14 are

realleged and incorporated as if fully set forth herein.

38.    In or about and between January 1992 and October

1999, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants JOHN

J. DEROSS, also known as "Jackie," ALPHONSE T. PERSICO, also

known as "Little Allie Boy" and "Allie Boy," and VITO SALERNO,

together with William Cutolo and others, knowing that the
property involved in financial transactions represented the
proceeds of some form of unlawful activity, knowingly and
intentionally conspired to conduct and attempt to conduct
financial transactions affecting interstate commerce, to wit: the
transfer of United States currency, which transactions in fact
involved the proceeds of specified unlawful activity, to wit:
loansharking, gambling, securities fraud, distribution of
controlled substances and extortion, knowing that such financial
transactions were designed in whole and in part to conceal and
disguise the nature, location, source, ownership and control of
such proceeds, in violation of Title 18, United States Code,
Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and
3551 et seq.)

## COUNT SEVEN
(Illegal Gambling)

39.   The allegations of paragraphs 1 through 12 are
realleged and incorporated as if fully set forth herein.

40.   In or about and between January 1992 and October
1999, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
MICHAEL T. DONATO, RALPH JUDE GUCCIONE, also known as "Anthony
Philips," "Ralph Rizzo" and "Ralph Russo," and JOSEPH ANTHONY
PETILLO, also known as "Joseph Paladino" and "Enrico Gambale,"

together with others including William Cutolo, knowingly and intentionally conducted, managed, supervised, directed and owned all or part of an illegal gambling business, which business was in violation of the laws of the State of New York, involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business, and remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955, 2 and 3551 et seq.)

## COUNT EIGHT
(Conspiracy to Distribute Marijuana)

41.    The allegations of paragraphs 1 through 12 are realleged and incorporated as if fully set forth herein.

42.    In or about and between January 1992 and January 7, 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH ANTHONY PETILLO, also known as "Joseph Paladino" and "Enrico Gambale," together with others, knowingly and intentionally conspired to distribute one thousand kilograms or more of a

substance containing marijuana, a Schedule I controlled
substance, in violation of Title 21, United States Code, Section
841.

(Title 21, United States Code, Sections 846 and
841(b)(1)(A)(vii); Title 18, United States Code, Sections 3551 et
seq.)

### COUNT NINE
(Conspiracy to Distribute MDMA)

43.   The allegations of paragraphs 1 through 12 are
realleged and incorporated as if fully set forth herein.

44.   In or about and between 1993 and 1995, both dates
being approximate and inclusive, within the Eastern District of
New York and elsewhere, the defendants DOMINICK DIONISIO, also
known as "Black Dom," and ENRICO LOCASCIO, also known as "Rico,"
together with others, knowingly and intentionally conspired to
distribute MDMA, a Schedule I controlled substance, in violation
of Title 21, United States Code, Section 841.

(Title 21, United States Code, Sections 846 and
841(b)(1)(C); Title 18, United States Code, Sections 3551 et
seq.)

### COUNT TEN
(Money Laundering Conspiracy: Conti-nect/ANET)

45.   The allegations of paragraphs 1 through 12 are
realleged and incorporated as if fully set forth herein.

46.   In or about and between June 1996 and October

2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN J. DEROSS, also known as "Jackie," DOMINICK DIONISIO, also known as "Black Dom," and CHRISTOPHER MORMANDO, also known as "Chrissy Boy," together with William Cutolo and others, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, knowingly and intentionally conspired to conduct and attempt to conduct financial transactions affecting interstate commerce, to wit: the transfer of United States currency, checks and money orders, which in fact involved the proceeds of specified unlawful activity, to wit: loansharking, gambling, securities fraud, distribution of controlled substances and extortion, knowing that such financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of such proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT ELEVEN
### (Conspiracy to Extort)

47.    The allegations of paragraphs 1 through 12 are realleged and incorporated as if fully set forth herein.

48.    In or about May 2000, within the Eastern District of New York and elsewhere, the defendants JOHN J. DEROSS, also

known as "Jackie," and RONALD CALIFANO, also known as "Downtown Ronnie," together with others, knowingly and intentionally conspired to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and their coconspirators conspired to obtain property, to wit: money, from John Doe #1, an individual whose identity is known to the Grand Jury, with John Doe #1's consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
(Forfeiture for Money Laundering Conspiracy)

49. Pursuant to Title 18, United States Code, Section 982, upon conviction of the defendant VITO SALERNO of the money laundering conspiracy offense set forth in Count Six of this indictment, the defendant VITO SALERNO shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited by the defendant VITO SALERNO is equal to the following:

a. the approximate sum of nine hundred sixty-five thousand dollars in United States currency;

b. all right, title and interest in the assets of the EMBASSY TERRACE, INC., 401 Avenue U, Brooklyn, New York;

c.    all right, title and interest in the assets
of NCT CATERING, INC., 401 Avenue U, Brooklyn, New York;

d.    all right, title and interest in the assets
of CLIFTON CATERING LLC, 401 Avenue U, Brooklyn, New York;

e.    all right, title and interest in the assets
of 402 REALTY CORPORATION, 402 Avenue U, Brooklyn, New York;

f.    all right, title and interest in the proceeds
of the sale of the lot or parcel of land, together with its
buildings, appurtenances, improvements, fixtures, attachments and
easements, located at 401-403 Avenue U, Brooklyn, New York,
described in the land records of Kings County, New York as Lot 1,
Block 7105-1; and

g.    all right, title and interest in the proceeds
of the sale of the lot or parcel of land, together with its
buildings, appurtenances, improvements, fixtures, attachments and
easements, located at 402 Avenue U, Brooklyn, New York, described
in the land records of Kings County, New York as Lot 1, Block
7129-1.

50.    If, by any act or omission of the defendant VITO
SALERNO, any property directly forfeitable pursuant to the
preceding paragraph:

    (1)    cannot be located upon the exercise of due
    diligence;

    (2)    has been transferred or sold to, or deposited

with, a third person;

(3)  has been placed beyond the jurisdiction of the
Court;

(4)  has been substantially diminished in value; or

(5)  has been commingled with other property which
cannot be subdivided without difficulty;

the defendant VITO SALERNO shall forfeit substitute property, up
to the value of the property described in subparagraphs (1)
through (5) of this paragraph, pursuant to Title 21, United
States Code, Section 853(p), as incorporated by Title 18, United
States Code, Section 982(b), including, but not limited to, the
following:

a.    all right, title and interest in the lot or
parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments and easements, located at 205
Eagleton Lakes Boulevard, Palm Beach Gardens, Florida, described
in the land records of Palm Beach County, Florida, on page 400 of
Book 11771, as Assessors Parcel #52424215180001240;

b.    all United States currency or other monetary
instruments on deposit in or credited to account number 56-
202531-0, in the name of NCT CATERING CORPORATION, located at
Richmond County Savings Bank;

c.    All United States currency funds or other
monetary instruments on deposit in or credited to account number

56-206418-6, in the name of DAX INVESTMENTS, INC., located at Richmond County Savings Bank;

d.    All United States currency funds or other monetary instruments on deposit in or credited to account number 56-203172-2, in the name of 402 REALTY CORPORATION, located at Richmond County Savings Bank; and

e.    All United States currency funds or other monetary instruments on deposit in or credited to account number 56-205469-0, in the name of CLIFTON CATERING LLC, located at Richmond County Savings Bank.

(Title 18, United States Code, Section 982)

### CRIMINAL FORFEITURE ALLEGATION
(Forfeiture for Money Laundering Conspiracy)

51.    Pursuant to Title 18, United States Code, Section 982, upon conviction of the defendant RALPH JUDE GUCCIONE of the money laundering conspiracy offense set forth in Count Five of this indictment, the defendant RALPH JUDE GUCCIONE shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property.    The property to be forfeited by the defendant RALPH JUDE GUCCIONE is equal to the following:

a.    an amount up to approximately one million, nine hundred thirty-six thousand, four hundred eighty-six dollars ($1,936,486) in United States currency; and

b.    all right, title, and interest in the lot or

parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 123 East Shore Drive, East Stroudsberg, Pennsylvania, described in the land records of Monroe County, Pennsylvania as Lot 132, Section 8.

52.    If, by any act or omission of the defendant RALPH JUDE GUCCIONE, any property directly forfeitable pursuant to the preceding paragraph:

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with, a third person;

(3)    has been placed beyond the jurisdiction of the Court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be subdivided without difficulty;

the defendant RALPH JUDE GUCCIONE shall forfeit substitute property, up to the value of the property described in subparagraphs (1) through (5) of this paragraph, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), including, but not limited to, the following:

a.    all right, title and interest in 487 REALTY

CORPORATION, 487 3RD AVENUE, Brooklyn, New York; and

        b.    all right, title and interest in 489 REALTY

CORPORATION, 489 3RD AVENUE, Brooklyn, New York.

        (Title 18, United States Code, Section 982)

A TRUE BILL

_____

FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.131